1

1    UNITED STATES DISTRICT COURT
2    DISTRICT OF SOUTH CAROLINA
     COLUMBIA DIVISION

3    ------------------------------

4    D. CHAD LAMOREAUX, M.D. and          CV NO.: 3:09-1457
     HEIDI LAMOREAUX,                     Columbia, SC
5                                         June 5, 2009

6           Plaintiffs

7        -vs-

8    PALMETTO HEALTH, et al.

9           Defendants

10   ------------------------------

11
             BEFORE HON. JOSEPH F. ANDERSON, JR.
12             UNITED STATES DISTRICT COURT JUDGE
                 MOTION HEARING VIA TELEPHONE
13

14   APPEARANCES:

15
     FOR PLAINTIFFS:       BURNETTE & ROTHSTEIN
16                         BY:  DAVID E. ROTHSTEIN, ESQ.
                           2322 Devine Street
17                         Columbia, SC  29205

18   FOR DEFENDANTS:       OGLETREE, DEAKINS, NASH,
                           SMOAK & STEWART, P.C.
19                         BY:  KATHERINE DUDLEY HELMS, ESQ.
                                CHRISTOPHER J. NEAR, ESQ.
20                         1320 Main Street, Suite 600
                           Columbia, SC  29201
21
                           GIGNILLIAT, SAVITZ & BETTIS, LLP
22                         BY:  SHAHIN VAFAI, ESQ.
                                VANCE J. BETTIS, ESQ.
23                         900 Elmwood Avenue, Suite 100
                           Columbia, SC  29201
24

25

2

COURT REPORTER:          DANIEL E. MAYO, CSR, RDR
                         Certified Realtime Reporter
                         901 Richland Street
                         Columbia, SC  29201

              STENOTYPE/COMPUTER-AIDED TRANSCRIPTION

1    THE COURT:  Good morning.  I believe we have everyone

2    on the line.  We have Mr. Rothstein representing plaintiff.

3    MR. ROTHSTEIN:  Yes, sir.  I'm in my conference room,

4    and Dr. and Mrs. Lamoreaux are here with me.

5    THE COURT:  And we have Vance Bettis and Shahin Vafai

6    for one group of defendants, Kathy Helms and Christopher Near

7    for the other group of defendants.  Is that correct?

8    MS. HELMS:  That's correct.

9    THE COURT:  Just for the record, this is the case

10   of -- help me with the pronunciation, Mr. Rothstein.

11   MR. ROTHSTEIN:  It's Lamoreaux, your Honor.

12   THE COURT:  Lamoreaux versus Palmetto and others.  It

13   is civil docket number 3:09-1457.  I am sitting in for Judge

14   Currie today, she's out of town on a conference committee that

15   she serves on, on the code of conduct committee, and this

16   emergency motion to remand came up and needs to be resolved by

17   Monday.  She sent word through her law clerks she would

18   appreciate it if I could handle the motion for her.  So

19   although the case is technically her case I'm supposed to rule

20   on the remand question today.

21   I will say I read the briefs that have been submitted.

22   Virginia Vroegop, one of Judge Currie's law clerks, brought me

23   case law I read.  I understand the issues.  I will say for the

24   record this is my second emergency remand motion in one week,

25   so --

1    MR. ROTHSTEIN:  I hope we reach the same result, your

2  Honor.

3    THE COURT:  Let me say, I guess, Mr. Rothstein, this

4  is your motion so you ought to go first.

5    MR. ROTHSTEIN:  Yes, sir.  Judge, I appreciate you

6  hearing this.  This is kind of law clerks' old home week here.

7  I think you've got one law clerk on one side and one on the

8  other and one in the middle.

9    THE COURT:  Right.

10    MR. ROTHSTEIN:  I don't know if that ever happened to

11  you.

12    THE COURT:  Might be a first.

13    MR. ROTHSTEIN:  I remember, Judge, in my first year of

14  civil procedure class of law school followed by federal

15  practice with Professor Stravitz, the touchstone rule for

16  removal is you look at the face of the well-pleaded complaint.

17  This is not an issue of one party preferring to be in state

18  court, one preferring to be in federal court, this is an issue

19  of subject matter jurisdiction of the federal court.  And the

20  only authority you have in this case is to send the case back

21  to state court.  There's no federal subject matter jurisdiction

22  despite the defendants' dire hopes that there is federal

23  subject matter jurisdiction.

24    The federal subject matter jurisdiction has to be

25  determined from the complaint, not from some offhand comment in

1    a deposition or a response to an interrogatory where the

2    defendant asks what's the basis of -- what speech are you

3    referring to in your First Amendment claim.  And in that

4    instance I said our First Amendment claim, referring to a

5    generic freedom of speech case, involved the following speech.

6    I know you've read a little bit about the factual background of

7    this case, your Honor, but the reason this is such an emergency

8    issue is because Dr. Lamoreaux's career is literally in the

9    balance here.  He was terminated from his orthopedic surgery

10   residence program about six months prior to the completion of a

11   five-year program.  So he completed almost four-and-a-half

12   years.

13            THE COURT:  I understand that.  I don't think we need

14   to get too deeply in the merits this morning because what is

15   really at issue is a procedural question.  And I understand

16   it's an important case to the plaintiff.  I can appreciate

17   that.  And I'm sure it's important to the defendants, as well.

18   And I understand there's a motion scheduled for Monday on some

19   type of injunctive relief.

20            But let me ask Mr. Rothstein, I know you look at the

21   well-pleaded complaint.  1446 says we can look at other

22   documents, and there is case law that says statements in a

23   deposition can be considered other documents.

24            MR. ROTHSTEIN:  Your Honor, this case is -- I don't

25   disagree with the general proposition that a deposition is --

1    can be an other document for purposes of removal.  But if you

2    look at cases that Mr. Vafai cited, the Sixth Circuit case he

3    mentioned is an ERISA case.  And what happened, the plaintiff

4    filed a state law claim against the employer alleging sort of a

5    nondescript breach of contract claim.  There was really no

6    detail in the complaint about what was at issue in the breach

7    of contract.

8              In his deposition the defense attorney asked the

9    plaintiff about the specifics of the breach of contract, and he

10   said that one of the promises that was breached was the promise

11   to extend this guy's pension plan or for inclusion of a pension

12   plan, and at that point it became apparent that the case was

13   covered by ERISA preemption.  And it was only -- I mean, the

14   only way that the defense lawyer could have known that the

15   breach of contract claim was an ERISA claim was by the

16   questions in the deposition.  And once it became clear that was

17   an ERISA issue, as your Honor knows, ERISA has complete

18   preemption, there's no such thing as a state law breach of

19   contract claim involving a pension.  And so the defendants

20   removed that case into federal court.

21             I don't have any problem with the holding of that case

22   because the complaint in that case was ambiguous.  Once it was

23   clarified in further discovery that it involved an ERISA case,

24   that is when the federal jurisdiction issue was raised and

25   that's when it became removable.

1    The other cases Mr. Vafai cited, including one from

2    the Fifth Circuit and Fourth Circuit, were diversity cases.

3    And, as your Honor knows, a lot of times in the well-pleaded

4    complaint it's unclear what the amount in controversy is or

5    what the citizenship of the parties is, or whether there's a

6    sham defendant included in the case for the sole purpose of

7    impeding diversity.  And in discovery if it comes out that --

8    in the Fifth Circuit case he cited the state law complaint

9    alleged a claim for in excess of $10,000 is all it said in the

10   complaint.  And in the deposition the defense attorney asked

11   the plaintiff how much he thinks he's been damaged and he said

12   it was in excess of $300,000.  So at that point the case became

13   removable because the plaintiff clarified that his amount in

14   controversy met the diversity limit.

15   Interestingly, in that case the defendants did not

16   remove the case within 30 days of the deposition, they waited

17   until about another month or so later until the expert witness

18   submitted a report that said the amount in controversy is 1.7

19   million.  And they removed the case after the 30 days of the

20   deposition but within 30 days of learning of the expert's

21   report.  And the court in that case actually remanded the case

22   to state court and said that the deposition could be another

23   paper for the removal statute, and they pointed to the fact

24   that the defendants knew at the time of the deposition that the

25   amount in controversy was $300,000, more than the $75,000

1    jurisdictional limit for diversity, and they should have

2    removed it within 30 days at that point.  Again, you've got

3    another situation where the complaint was unclear as to whether

4    there was federal jurisdiction or not.

5            Here our complaint raises due process claims and

6    freedom of speech claims, not under the federal First Amendment

7    or the Fourteenth Amendment, but under state law constitution.

8    And it's very clear that we initially brought the case under

9    the federal constitution, and when the defendants told the

10   judge they intended to remove the case we removed the state --

11   federal constitutional claims and the 1983 action and decided

12   to proceed entirely on the state law constitution.  So at that

13   point our well-pleaded complaint had no basis for alleging

14   there was any kind of federal question and it was not

15   removable.

16           Now, Mr. Vafai's arguments about the deposition are

17   very disingenuous, your Honor.  The questions that were asked

18   in the deposition were asking -- this was again, it was a 21

19   hour deposition.  About 18 hours into the deposition Mr. Vafai

20   asked -- gets around to asking the plaintiff about his due

21   process claim.  And Mr. Vafai read a statement, a question that

22   I asked in one of the depositions in their deposition taken

23   completely out of context where I talk about due process under

24   both the state and federal constitution.  And Mr. Vafai asked

25   are you -- does your complaint include claims for due process

1    under the state and federal constitution, or something to that

2    effect, and my client said I believe they are in there.  You

3    know, it was kind of referring back to the amended complaint.

4    And again Mr. Vafai said state and federal due process.  I

5    mean, my client does have a state due process claim, it's

6    virtually identical to the federal due process claim, but we

7    specifically withdrew the federal claim.

8         And, your Honor, in my brief or my motion I cited a

9    case that you authored from 1990 where you said that the

10   plaintiff has the right, is the master of his complaint and has

11   the right to pitch a set of facts that could give rise to

12   either a state law claim or a federal law claim exclusively as

13   a state law claim.  And that's what we have got in this case,

14   that's what we always intended to do in this case since the

15   amended complaint was filed, and I think it's disingenuous for

16   Mr. Vafai to say that two isolated comments in the deposition

17   suddenly give rise to federal jurisdiction.

18        My client has not had a chance to review the entire

19   deposition.  He has not read and signed his deposition.  The

20   only thing that's been provided the court are very brief

21   excerpts.  From probably over a thousand page transcript of the

22   deposition they pulled out maybe six or eight pages of

23   excerpts, and the excerpts are not even complete, and trying to

24   argue there's a federal question here.  That's just not true

25   and it's not academically or intellectually honest.

1          The other issue they raise is the -- our interrogatory

2     responses.  And, your Honor, I faxed over there not just my

3     response but also the question or the interrogatory.  And this

4     was -- these were served after our amended complaint was

5     served.  Interrogatory number 38 states identify in detail the,

6     quote, speech that is the genesis of Dr. Lamoreaux's First

7     Amendment claim, including when and in what form the

8     communication was made, to whom, and the nature of the alleged

9     consequence.  That was from Miss Helms representing Palmetto

10    Health.

11          Her reference to, quote, First Amendment is I think a

12    generic reference to a freedom of speech claim.  I just sort of

13    parroted back to her her question on state plaintiff -- Dr.

14    Lamoreaux's First Amendment claim is based on the following

15    communications.  I did not amend the complaint, I did not

16    indicate that we are going to amend the complaint.  You know,

17    most people have a general idea of what the term First

18    Amendment means.  I mean, it means freedom of speech, freedom

19    of religion, freedom of press, freedom of assembly.  First

20    graders know First Amendment.  And when I was referring to the

21    First Amendment claim, that means our freedom of speech claim,

22    which is technically a South Carolina Article One, Section Two

23    claim.  But most people don't know freedom of speech by that

24    shorthand, they usually refer to it as First Amendment.

25          THE COURT:  You are saying First Amendment has been

1    used so generically it means freedom of speech to most people

2    without specific reference to the Bill of Rights, the First

3    Amendment of the Bill Of rights?

4         MR. ROTHSTEIN:  Yes, sir.  And, I mean, I think it's

5    clear the only reason they removed the case yesterday was to

6    avoid the hearing on Monday.  Even if they thought there was a

7    federal question raised they could have waited until the

8    transcript was prepared, they could have given my client a

9    chance to read and sign the deposition, they could have asked

10   me whether we're going to amend the complaint to include

11   federal claims, but they didn't do that.  They, without notice

12   to me or anything, they removed the case to federal court two

13   days before the hearing was scheduled.  And I think that's

14   disingenuous and it's not acceptable.

15        And, again, this court doesn't have to get into those

16   issues, this is a matter of federal subject matter jurisdiction

17   and the court's power is limited to sending this case back to

18   state court.

19        THE COURT:  Let me ask you this:  Are you prepared now

20   to commit on the record that there is not a federal claim and

21   there never will be a federal claim, if remanded there won't be

22   a -- any amendment at any time?  Because there's always a

23   question about a litigant waiting until the one year has passed

24   and then amending to bring in a federal claim.

25        MR. ROTHSTEIN:  Well, Judge, the one year applies only

1   to diversity.

2           THE COURT:  You are right.

3           MR. ROTHSTEIN:  If at some point down the road I

4   decide, two years from now or a year-and-a-half, decide to

5   amend the complaint to include a federal claim it becomes

6   removable.  The one-year limit only applies to adding claims

7   that are involving the court's federal question jurisdiction, I

8   mean diversity jurisdiction.  The one-year limit does not apply

9   to federal question.

10          THE COURT:  Well, so you can't commit that you won't

11  amend it later to add a federal claim?

12          MR. ROTHSTEIN:  Well, if he does then it becomes

13  removable at that point.  But right now we don't foresee adding

14  any federal claims, but if we do then I agree the case would

15  become removable at that point.

16          THE COURT:  All right.

17          MR. ROTHSTEIN:  Even if it's beyond a year.

18          THE COURT:  Very good.  Let me hear from the

19  defendants.  Who wants to go first?

20          MR. VAFAI:  I'll speak on behalf of all the

21  defendants.  This is Shahin Vafai.  Mr. Rothstein's points of

22  law covers -- he does not have authority to overrule a

23  congressional statute.  We need to go back to the wording of

24  1446(b) itself.  And your Honor, the explicit terms of 1446(b)

25  are that if the case stated by the initial pleading is not

1    removable, a notice of removal may be filed within 30 days

2    after receipt by the defendant through service or otherwise of

3    a copy of, one, an amended pleading; two, a motion; three, an

4    order; or, four, other paper from which it may first be

5    ascertained the case is one which is or has become removable.

6    Mr. Rothstein is focusing on the well-pleaded complaint rule

7    and, you know, whether these federal claims appear in his

8    amended complaint or not.  That completely ignores the latter

9    language in 1446(b) which states that something other than a

10   pleading, namely a motion, order, or other paper can give rise

11   to a removable issue.

12           And that's precisely what we have here, your Honor.

13   The plaintiff explicitly testified in his deposition numerous

14   times that he had constitutional due process and First

15   Amendment claims.  Mr. Rothstein wants to argue that, well, he

16   didn't know what he was talking about, and he didn't have a

17   copy of the complaint in front of him, and he's a lay person.

18   I think we have to understand the following:  One, Dr.

19   Lamoreaux is not what may be a typical naive, uneducated

20   litigant.  He is highly educated, he is deliberate, and he is

21   calculating.  He, with the possible exception of Mr. Rothstein,

22   was the smartest person in that deposition room.  And if one

23   reads the transcript and watches his video deposition one can

24   see that he is quite deliberate in his responses.  He knew

25   exactly what he was testifying to, your Honor.

1          But even if we assume that he did not, the problem

2    with Mr. Rothstein's argument is that he has waived any

3    objection to the questions or the responses that Dr. Lamoreaux

4    has provided.  We cited in our memo Rule 32.  Mr. Rothstein had

5    an obligation to object to any question that he felt was

6    improper, or as the rule explicitly states, any answer he felt

7    was improper.  If Dr. Lamoreaux was admitting that he had a due

8    process claim under the federal constitution at that point Mr.

9    Rothstein had an obligation to step in and say objection,

10   that's a legal question, you can't testify to -- inconsistent

11   with the deposition -- with our complaint here.  In addition to

12   that -- so he has initially waived any argument that he may

13   assert at this time.  In addition to that, on

14   cross-examination --

15        THE COURT:  Before we go too far, the answer was sort

16   of a, I don't want to say ambiguous, he did use the word, I

17   believe, a couple of times, didn't he?

18        MR. VAFAI:  If you read his entire deposition that was

19   his entire nature of his testimony where he was dodging and

20   weaving every question we were asking about, you know, 25 to 37

21   lies that he ultimately admitted to having told during

22   residence, but he nevertheless acknowledged that.  And at the

23   very end of that testimony, your Honor, he on his own, not in

24   response to a question, but he on his own referenced his First

25   Amendment claim.  So that's the initial waiver argument.

1    THE COURT: Let me, before we leave that, though, the

2    first time it came up with the deposition, I'm looking at page

3    seven of -- well, page five I guess it is, the question was are

4    you claiming the defendants in this lawsuit violated your due

5    process rights as guaranteed by the state and federal

6    constitution? And he said, I believe that's what's set forth

7    in the complaint, yes. He was wrong in his belief there, it's

8    not in the complaint.

9    MR. VAFAI: Well, your Honor, two lines down, if you

10   look further, I went back and I said well, is it set forth in

11   your amended complaint, and he affirmed, yes, it was. So in

12   his belief, and this really helps the defendant rather than the

13   plaintiff, in his belief and his intention to assert the

14   federal constitutional claim.

15   Now, even if we assume that that's somehow ambiguous,

16   Mr. Rothstein had an obligation on cross-examination to clean

17   up any of that testimony. He said that well, he didn't have a

18   copy of the complaint in front of him to tell us whether he was

19   alleging these claims or not. Well, at that point Mr.

20   Rothstein can ask him directly what are your claims? Are you

21   in fact asserting a federal due process and First Amendment

22   claim? And if he had said no then we would not be here, your

23   Honor.

24   The second point, and this goes to the interrogatory

25   responses that Mr. Rothstein tried to kind of push to the side,

1    he indicated that even a first grader would have an

2    understanding that First Amendment refers to free speech.

3    Well, your Honor, the problem here is that we're not dealing

4    with first graders, we're dealing with seasoned counsel.  When

5    Mr. Rothstein received an interrogatory that is asking about

6    First Amendment claims he is not answering as a first grader,

7    he is answering as a licensed attorney representing his client.

8    And his response as an attorney was that my First Amendment --

9    let me quote the language exactly.  Plaintiff Dr. Lamoreaux's

10   First Amendment claim is based on the following communications.

11   He could have easily said I object, I don't have a First

12   Amendment claim, I simply have a free speech claim under the

13   South Carolina constitution.

14        First Amendment is a term of legal art, your Honor,

15   and there simply is not a First Amendment claim relevant here

16   under the state constitution.  The First Amendment to the state

17   constitution deals with the drainage of swamp and lowland, it

18   has nothing to do with free speech.  So even if Dr. Lamoreaux

19   is a layman who was somehow duped, Mr. Rothstein certainly is

20   not and he is bound by those discovery responses.

21        Your Honor, in your questioning of Mr. Rothstein you

22   directly asked the question of whether he's willing to dismiss

23   his federal claims or not.  And I didn't hear a response from

24   him.  And, you know, that is precisely the problem that we have

25   had in this case.  We simply don't know whether they are

1    asserting at one stage or another federal claims or not.

2    Initially they were.  As soon as we informed them that we were

3    planning to remove the case to federal court they filed an

4    amended complaint and withdrew those federal claims, which they

5    had a perfect right to do.  But then since then these federal

6    allegations have been sneaking back in through the

7    interrogatory responses, through Mr. Rothstein's question of

8    Dr. Koon, our witness, through the plaintiff's deposition

9    testimony.

10         So the plaintiff has to decide either he's asserting

11   these claims or he is not and his bluff needs to be called.  If

12   he is not asserting the claims then Mr. Rothstein can today

13   stipulate on the record before your Honor that he is dismissing

14   with prejudice any federal due process and First Amendment

15   claims.  And if he does that, your Honor, right now the

16   defendants consent to immediately have this case remanded to

17   state court.

18         THE COURT:  So --

19         MR. ROTHSTEIN:  Judge, I will stipulate that my

20   complaint as stated right now does not contain any federal

21   claim.

22         MR. VAFAI:  Your Honor, that was not the question you

23   asked and that was not the suggestion I made.  Again Mr.

24   Rothstein is dodging the direct question, which is will the

25   plaintiff stipulate to dismiss with prejudice federal due

1    process and First Amendment claims.  It is a yes or no

2    question.

3              MS. HELMS:  Your Honor, may I address two small

4    matters?  He indicated Dr. Lamoreaux's response to the question

5    about the free speech claims included a preface.

6              THE COURT:  It started out that way, at least.

7              MS. HELMS:  It did.  My question is.  My question it

8    did not.  As a matter of fact, if it isn't even apparent in the

9    written transcript it will be in the videos, when I asked the

10   question about free speech Dr. Lamoreaux took several minutes,

11   because he expressed he wanted to be very clear in his

12   response.  And he paused for a number of minutes to think about

13   his response and was very deliberate in his response.  So with

14   regard to that question he did not preface that with I believe.

15   And Mr. Rothstein indicated I used the term First Amendment

16   very generically.  I did not.  As a matter of fact, that part

17   of our discovery request were in fact drafted when the federal

18   claim was still in and that's how that was in there, it was not

19   a generic term at all.  Those are small points, but just points

20   of clarity.

21             THE COURT:  All right.

22             MR. ROTHSTEIN:  Your Honor, can I respond to Mr.

23   Vafai?

24             THE COURT:  Briefly.  Go ahead.

25             MR. ROTHSTEIN:  Briefly.  First of all, Judge, the

1    language of 1446(b) was Mr. Vafai's kind of glossing -- the

2    very heart of the matter that the case still has to be or has

3    become removable.  That addresses the court's subject matter

4    jurisdiction.  And, your Honor, subject matter jurisdiction can

5    be raised at any time.  If this case were kept in federal court

6    we could go to trial, they could raise this on appeal to the

7    Fourth Circuit, the district court never had federal subject

8    matter jurisdiction in the case and the federal court, the

9    Fourth Circuit would agree with that and throw the case out.

10            THE COURT:  They couldn't do that if they had removed

11    it, if they were the moving party, could they?

12            MR. ROTHSTEIN:  You can't waive subject matter

13    jurisdiction by removal.  You can waive personal jurisdiction,

14    you can waive some issues, but subject matter jurisdiction is

15    not waivable.  So, your Honor, the question is is there federal

16    jurisdiction in our complaint.  We're admitting on the record

17    there is not, there is not federal subject matter jurisdiction

18    in our complaint and that I don't think there was any ambiguity

19    in that from any of our discovery responses or Dr. Lamoreaux's

20    deposition.  But to the extent there was any, I think Dr.

21    Lamoreaux clarified that in his affidavit.  He has the right to

22    read and sign his deposition, which if he needs to clarify that

23    when he reads and signs his deposition he certainly will do

24    that.  And there's just, there's no basis for federal

25    jurisdiction in this case, your Honor.

1          Now, Mr. Vafai is now saying I somehow waived my

2     objections to this by not objecting during the deposition.

3     Well, Mr. Vafai knows very well that all objections are

4     reserved to the trial except to the form of the question.  And

5     Mr. Vafai's questions said state and federal.  I think he said

6     rights that are protected by the state and federal

7     constitution.  Well, those due process rights are protected by

8     the state and federal constitution.  We're just suing under the

9     state constitution.  And that's not ambiguous.  Dr. Lamoreaux

10    said I believe that's what's set forth in the complaint.  If

11    Mr. Vafai looks back at the complaint there's no question that

12    this case, well-pleaded complaint does not contain any federal

13    claims.

14          THE COURT:  All right.  I think I've heard enough.

15    Let me say, I probably should have had said this at outset, I

16    had the precise issue come up once before.  Not the precise

17    issue, but a similar issue.  The plaintiff sued in state court

18    for assault and battery and a few other related state law

19    claims, and in his deposition he said that he was suing for

20    civil rights violations.  And so in comes a notice to remove,

21    same type of issue, did the plaintiff in his deposition amend

22    his complaint to assert some federal claims, 1983 type claims.

23    And I held in that case that the case needed to be remanded,

24    that the plaintiff's deposition didn't change the legal theory

25    of the case.  And a lay plaintiff might not know what civil

1    rights claims -- to some people assault and battery claim would

2    be a civil rights claim.  Not quite on point with what we have

3    here.

4            I do have some cases that Virginia pulled for me, and

5    it seems to if me if we just focus on the depositions, that

6    kind of dichotomy, sometimes the plaintiff in deposition

7    reveals or confirms facts that relate to subject matter

8    jurisdiction, such as the jurisdictional amount, the amount of

9    the damage claim when it was ambiguous in the complaint, or the

10   fact that the claim -- the claim is brought pursuant to an

11   employee benefit plan which would trigger ERISA complete

12   preemption.  And in those type cases where the deposition

13   testimony reveals facts that create jurisdiction in the federal

14   court removal has been held to be proper.

15           Other cases on the other side of the divide are cases

16   where the plaintiff talks about additional legal theories that

17   are technically not pled in the complaint.  For example,

18   there's one, United States versus Shippell, it's not a reported

19   decision, but it's out of West Virginia.  I'm sorry, I'm not

20   sure where it's from.  West Virginia, Southern District of West

21   Virginia.  And in that case the plaintiff in his deposition

22   seemed to allude to the family and medical leave act rights

23   although it had not been pled in the complaint.  And the court

24   there held a reference to that in the complaint -- in the

25   deposition was not sufficient to amend the complaint which

1  carefully avoided pleading the FMLA.

2        And, similarly, Watson versus City of Meridian out of

3  Mississippi, there I don't remember what the new claim came in

4  there was, anyway, remand was held proper again, and the court

5  held that the deposition could not add allegations to add new

6  federal claims that did not appear anywhere in the pleadings.

7  I can't for the life of me find what the new issue was there.

8        But, in any event, I'm just not persuaded in this case

9  that the deposition testimony is sufficient to constitute an

10 other paper that puts the party on notice that a federal claim

11 is asserted.  It was apparently a long deposition, 21 hour

12 deposition.  I'll accept the fact that the plaintiff is very

13 articulate, very educated, probably knows a lot more about the

14 law than most layman or most doctors even know, and I can

15 accept that.  But the fact that a complaint carefully avoided

16 pleading a federal claim to me is important.

17        And as we all know, federal courts are courts of

18 limited jurisdiction.  We're supposed to police our

19 jurisdiction, any doubts about remand should be resolved in

20 favor of remand.  And the current complaint does not include

21 federal claims, and there's no evidence of an immediate intent

22 to add any federal claims.  In fact, there was an amendment

23 earlier which expressly removed the federal claims.

24        If the plaintiff later seeks to amend I think that

25 would require court approval in state court, and the state

1    judge may well not allow an amendment.  If he does, of course

2    the case is immediately removable and I guess it will be right

3    back here on Judge Currie's docket.

4         As to the interrogatory, I'm also not persuaded there

5    was any amendment of the pleadings there.  I'm going to accept

6    the fact that First Amendment was used in a generic sense.  I

7    understand the arguments and I think Mr. Vafai did a very good

8    job of articulating a very plausible way to look at it.  But I

9    myself was not aware of the fact that in South Carolina the

10   First Amendment claim relates to dredging of harbors or wetland

11   or something like that.  I would have thought it would have

12   related to a free speech claim, as well.

13        So for all those reasons, it's an awfully close call,

14   I said the same thing Monday, it's an awfully close call but in

15   a removal/remand situation if it's a close call by definition

16   the case goes back because doubts about removal are to be

17   resolved in favor of remand.

18        So I will enter an order remanding.  I'm not going to

19   award any fees or costs anyway on the remand order.  And that

20   will do it.

21        MR. ROTHSTEIN:  One other issue, Judge.  I think we

22   informed Judge Cooper late yesterday afternoon about the

23   emergency hearing we're having today.

24        THE COURT:  Right.

25        MR. ROTHSTEIN:  I asked him to hold our time Monday.

24

1    I don't know if you would be able to communicate with his

2    chambers about the ruling, or do you want me to send him an

3    e-mail?

4            THE COURT:  We will have a text -- we will have a text

5    order out in the next ten minutes and y'all can take it and

6    present it to judge Cooper.

7            MR. ROTHSTEIN:  Thank you very much, Judge.

8            THE COURT:  Thank you.

9            (Recess, 11:47.)

10

11

12

13

14          I certify that the foregoing is a correct transcript
     from the record of proceedings in the above-entitled matter.

15

     Date:  6-26-09                        s/  Daniel E. Mayo
16

17

18

19

20

21

22

23

24

25